Yaman Salahi (SBN 288752)
yaman@salahilaw.com
Nicole Cabañez (SBN 365099)
nicolec@salahilaw.com
Taylor Applegate (SBN 357742)
taylora@salahilaw.com
SALAHI PC
505 Montgomery Street, 11th Floor
San Francisco, CA 94111
Tel: (415) 236-2305

*Counsel for Plaintiff and the proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **JUSTIN ALICEA**, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**PAYBYPHONE US INC.**, a Delaware corporation, **PAYBYPHONE TECHNOLOGIES INC.**, a Canadian corporation,<br><br>*Defendants*. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Justin Alicea brings this Class Action Complaint and Demand for Jury Trial against Defendants PayByPhone US Inc. and PayByPhone Technologies Inc. (together, "PayByPhone") for misleading consumers by starting street parking meter timers before consumers have confirmed and paid for a transaction. Plaintiff alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief.

## I. NATURE OF THE ACTION

1. For decades, street parking meters have operated according to a familiar model. The driver of a vehicle parks their car, approaches the meter, and then pays for a fixed amount of time. The meter does not begin to count time until payment has been made. The driver is responsible for keeping track of when their time will expire and returning to pay for additional time if needed.

2. As technology advanced, parking meters adapted in modest ways. They began to accept credit cards instead of coins, for example. But the meters' basic functionality remained the same: consumers paid for fixed periods of time that began to run from the moment their payment was processed.

3. With the proliferation of smart phones, payment collection began to shift away from collection by a meter (such as by depositing coins or swiping a credit card) to collection via mobile phone applications. PayByPhone is one such phone app. Using these technologies, consumers can make their payments from their phones rather than by walking up to a parking meter. They can also use the app to pay for additional parking time without returning to their vehicles, and by using a variety of payment methods.

4. Though PayByPhone's service offers important conveniences, the app operates contrary to deeply engrained consumer expectations. PayByPhone begins charging customers for their time *before* they make a payment. Reasonable consumers do not expect that to happen, and PayByPhone's deceptive interface and payment flow give reasonable consumers no reason to think otherwise. For example, PayByPhone does not make clear and conspicuous disclosures about its unorthodox method of counting time or charging for parking. As a result, consumers are not given the full allotted parking time for which they pay. PayByPhone profits from this deceptive practice because it charges a service fee for each transaction. The more transactions it processes, the more it earns. Thus, when a consumer's time runs out early, they either must pay to extend their time with a second transaction, or vacate the spot and create additional opportunities for another consumer to occupy a parking spot. Either way, PayByPhone has the opportunity to earn more profit by handling a greater number of transactions than would otherwise be the case.

5. Plaintiff brings this action to remedy PayByPhone's conduct and to recover the sums he and other Class members were unjustly charged.

## II. PARTIES

6. Plaintiff Justin Alicea is a natural person who resides in San Francisco, California. Mr. Alicea regularly uses PayByPhone to pay for street parking. However, until shortly before filing this complaint, Mr. Alicea was not aware that PayByPhone's app was designed to begin running his parking

timer even before he had completed a transaction. On at least one occasion, Mr. Alicea has been shortchanged at least a minute for his parking reservations. As a result, Mr. Alicea received less time for his parking reservations than he paid for and expected to receive, suffering economic injury as a result. Had Defendants clearly disclosed that they would begin charging for parking time before payment was complete, Mr. Alicea would not have proceeded with the transaction or would have taken steps to avoid the charge, such as by paying at a physical parking meter or initiating the reservation and payment process only when he intended his timer to start.

7. Defendant PayByPhone Technologies Inc. is a Canadian corporation with its headquarters in Vancouver, British Columbia. It offers payment-by-phone services for street parking in over 1,300 cities across the world through its regional subsidiaries. Globally, it processes more than $641 million in parking payments every year.

8. Defendant PayByPhone US Inc. is a Delaware corporation and wholly-owned subsidiary of PayByPhone Technologies Inc. that offers payment-by-phone services for consumers in the United States.

## III. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (i) at least one member of the proposed Class is a citizen of a state or country different from the Defendants; (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs; (iii) there are at least 100 class members; and (iv) none of the exceptions under the subsection apply to this action.

10. This Court has personal jurisdiction over Defendants because they transact significant business in this District and the unlawful conduct alleged herein occurred in this District.

11. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiff's claims arose in this District.

## IV. DIVISIONAL ASSIGNMENT

12. Assignment to the San Francisco Division is proper pursuant to Civil L.R. 3-2(c)-(d), because this is a civil action arising in the county of San Francisco, where a substantial part of the events or omissions giving rise to the claims alleged herein occurred.

## V. COMMON FACTUAL ALLEGATIONS

### A. Background on PayByPhone

13. PayByPhone was founded in 2001 to "find a way to take the pain out of parking." As PayByPhone explains, its app "lets you pay for parking with a few quick taps. No coins, no hunting for the machine, just a clever little app that means you spend less time running back to your car and more time doing what matters most."

14. PayByPhone's app can be used by consumers wherever a parking provider, such as a municipality for street parking or garage owner for private parking, has contracted with the company.

15. Using PayByPhone is straightforward. As explained on its website, first, users must download the app from the Google Play Store or Apple App Store. Second, users must enter a "location number" for their parking, which is typically prominently displayed on a parking meter, a nearby street sign, or other placard. Third, users are prompted to "Enter duration," that is, the number of minutes or hours they wish to park. A payment is processed once they confirm their payment details. Finally, users can use their phones to extend their parking session if they have not maxed out permissible time at a particular location. The infographic below is taken from PayByPhone's website:

**<u>Figure 1: How it Works</u>**




16. PayByPhone has been adopted around the United States. According to the company's website, as of 2025, PayByPhone services customers at locations in Alaska, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Kentucky, Maryland,

Massachusetts, Minnesota, Mississippi, Missouri, Montana, Nevada, New Hampshire, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Carolina, South Dakota, Texas, Utah, Washington, and Wisconsin.

17. In a typical arrangement, PayByPhone contracts with a municipality or other entity, like a private parking garage, transit agency, or university. Under these contracts, PayByPhone provides the technology, software integrations, and payment systems needed for mobile and automated parking payments. In exchange, parking operators pay PayByPhone for this service, usually through a per-transaction fee, a platform subscription fee, or a share of the revenue from transaction fees. Those fees are passed on to consumers, either through the parking fees they pay or through a separate transaction fee. PayByPhone's transaction fee, sometimes referred to as a service or convenience fee, may be charged to the driver, to the parking operator, or split between them, depending on local rules and contracts.

18. Some jurisdictions pass the transaction fees on directly to consumers as a separate line item. For instance, in San Francisco, consumers pay a 35 cent service fee for each transaction. For that reason, PayByPhone generally has a greater economic incentive to induce a higher number of short-term reservations (*e.g.*, two 15-minute reservations) than a smaller number of longer-term reservations (*e.g.*, one 30-minute reservation). Indeed, it usually earns twice as much from two reservations than it does from one (*e.g.*, in San Francisco, 70 cents instead of 35 cents). It therefore benefits economically from shortchanging customers for the duration of parking for which they pay.

19. Many California cities allow people to pay for parking using PayByPhone, including Glendale, Inglewood, Newport Beach, Oceanside, Redondo Beach, Redwood, Richmond, San Francisco, San Luis Obispo, San Mateo, as well as numerous private and public parking lots, university campuses, and other venues.

20. For example, San Francisco's Municipal Transportation Agency (SFMTA) adopted PayByPhone in 2011, and has allowed consumers to use the app to pay for approximately 26,000 metered parking spaces for over a decade. Between 2015 and 2025, the proportion of parking revenue collected through PayByPhone in San Francisco tripled from approximately 12% to over 37%. In 2024-2025 alone, PayByPhone transactions in San Francisco averaged 500,000 per month, or 6 million

per year.

**B. PayByPhone's Parking Reservation Interface Misleads Consumers**

21. As noted above, a consumer who wishes to pay for parking using PayByPhone starts by opening the app and entering a location code. The code is usually posted on parking meters, street signs, or other nearby placards. When a user enters a code for a particular parking spot, PayByPhone identifies the appropriate fees to charge for that parking location. The app does not require the user to be physically present at a parking space to search for that location or even pay for parking there. Indeed, the user can be anywhere when they initiate the process.

22. Once a location is confirmed, PayByPhone prompts users to "Enter duration" and "Enter length of stay" for the location. Users can enter a length of stay in either minutes or hours. The app also displays the parking rates for the location using quantities of time as the relevant unit of measurement (*e.g.*, "1 hr - $4.35" "2 hrs - $8.35"). In other words, users are asked *how long* they want to stay (*e.g.*, 15 minutes), not what time they want to leave (e.g., "4:07 p.m."). Users are thus led to believe they are transacting to purchase a specified number of minutes or hours. This first step of the process is reflected in Figure 2 below (the red annotations will be explained later).

**<u>Figure 2: Select Duration</u>**



23. The user must then press a "Confirm duration" button to proceed to a payment screen, depicted below in Figure 3 with red annotations that will be explained later. The top portion of the screen confirms details about the parking location, vehicle license plate, and period of time purchased, allowing users to scroll through the relevant fee breakdown if they desire. The lower portion of the screen depicts a total fee to be charged, and contains a menu to select from pre-populated payment methods before pressing "Pay" to proceed.

**Figure 3: Select Payment Method**




24. The only thing for the user to do at this point is choose how they will pay. No charge has been made yet, nor has any parking purchase been confirmed. Indeed, users can visit this screen from anywhere in the world; they have not yet indicated to PayByPhone in any way that they have in fact parked a vehicle at the location in question. A reasonable user's expectation at this stage in the process is that they are merely selecting their payment preferences, not that the 15 minutes they are considering to purchase have already started running—*before* they have even confirmed payment.

25. There are many reasons why a consumer would be at this screen even if they have not yet parked their vehicle. Imagine, for example, a person who frequents a particular parking location

and has saved it in their phone for convenience, as PayByPhone's saved locations feature allows. Or another person who is still in the process of searching for a parking spot, but tees up the reservation in their phone ahead of time (many PayByPhone parking codes are by street or area, and are not specific to a single parking spot). Or someone who is curious about what they'll need to pay when they arrive at a destination. A user may also spend more than a de minimis amount of time at this screen if they need to navigate their payment options or add a new payment option, such as an additional credit card. Thus, a reasonable consumer is still expecting to receive the specified period of time (*e.g.*, 15 minutes) *after* they have actually selected and confirmed a payment method. A reasonable consumer would not expect that the timer has already started running on them because that is not how traditional parking meters have ever worked. Rather, they expect that the counter will not start running until after they have made their payment.

26. PayByPhone's user interface is misleading. It does not provide information or other disclosures sufficient to dispel or correct the expectations of a reasonable consumer in these circumstances. For example, there are no banner or alert disclosures notifying consumers of the exact moment the clock on their reservation begins to run. Likewise, the confirmation screen displays a fixed duration of time ("Parking for 15 minutes"). A user can wait at this confirmation screen indefinitely before proceeding, and as mentioned earlier, may arrive at this screen well before they park their vehicle. They would have no reason to believe that their time is already running even before they confirm and pay. For example, the number of minutes to be purchased does not change while the transaction is pending, such as with an animated count-down (*e.g.*, "Parking for 15:00 minutes," "Parking for 14:59 minutes," "Parking for 14:58 minutes," etc.). Such a live countdown would arguably make it clearer to consumers that time is already running on the proposed transaction and parking reservation.

27. Imagine a user has waited two minutes at the "Select Payment Method" screen depicted in Figure 3, above for example. Figure 3 is first displayed to a user at 3:52 p.m. After two minutes have passed, the time is now 3:54 p.m. Yet, as depicted in Figure 4 below, the screen still shows a static reference that the user will eventually purchase "Parking for 15 mins."

**Figure 4: Wait Two Minutes**




28. To the extent the transaction details continue to state, "Expires today, 4:07 PM," a reasonable consumer, given the pending nature of the transaction, expects that simply to be a hypothetical or illustrative example based on the time the screen originally loaded (as shown by the red annotations above). That expectation is especially true considering deeply engrained consumer expectations about how parking meters operate. And no reasonable consumer would think it necessary to use the static expiration time to avoid being shortchanged, particularly because doing so would require the consumer to take the extra, illogical step of calculating the difference between the expiration time and the current time at the precise moment they are ready to finalize the transaction. Only then could a user realize that the 15 minutes they had intended to purchase was suddenly down to 13 minutes yet would still cost them 15 minutes' worth of parking time. In other words, in the above example a reasonable consumer would *not* expect that, instead of buying the 15 minutes they'd selected to purchase, they were suddenly paying the same price for a reservation that would end several minutes earlier, at 4:07 p.m., merely because they waited before clicking "Pay." Rather, they are still expecting that they will be purchasing 15 minutes of time, to begin whenever they submit payment.

29. But that, apparently, is not how PayByPhone counts time. The sleight of hand is so subtle that nobody can pick up on it until *after* the payment is made, if at all. The screen below is shown immediately after a payment is made, and, in this hypothetical, unexpectedly shows that over 2.5 minutes have already run on the counter *before* the user had even confirmed the transaction. Thus, a reasonable consumer who is expecting to receive 15 minutes of parking time when they pay for 15 minutes ends up receiving only 12 minutes and 24 seconds, being shortchanged around 2.5 minutes, as demonstrated in Figure 5 below.

**Figure 5: Timer Starts Early**




30. This misrepresentation and misleading user interface for reserving and confirming a parking reservation have real consequences. For one, consumers are shortchanged for parking duration, paying for more time than they ultimately receive. As a result of receiving less time than they purchased, a consumer's time expires prematurely. This means that they must leave sooner than expected or face the risk of receiving a parking citation. Alternatively, it often necessitates a supplemental payment to extend parking time, if an extension is even permitted: some parking spots have fixed maximum time limits that PayByPhone will enforce by declining to allow an extension.

31. As noted above, regardless of how a consumer responds to the unexpected early expiration of their parking time, PayByPhone benefits from this misleading payment model and user interface. PayByPhone typically earns money based on the number of transactions it handles, not the total amount of parking time purchased. Thus, if a consumer needs to separately purchase an additional 2.5 minutes when their timer unexpectedly ends just short of what they had planned and expected, PayByPhone is paid twice as much in service fees than it otherwise would have earned. In other words, a consumer who makes two separate payments for 15 minutes and 5 minutes, respectively, pays twice as much in convenience fees as a consumer who makes a single payment for 20 minutes. PayByPhone thus receives an unearned profit by causing the unnecessary extensions through its misleading checkout flow. Even if a consumer chooses to vacate the spot in lieu of making a second transaction for additional time, PayByPhone benefits because the space has been freed up prematurely for a new vehicle to park, and thus another transaction to occur.

32. Finally, PayByPhone is not required to start running the counter whenever a user initiates the transaction process. Upon information and belief, PayByPhone takes no steps to verify that the user is in fact occupying the parking spot in question when a reservation is being made. A user can also make more than one reservation at a time through the PayByPhone app.

## VI. CLASS ACTION ALLEGATIONS

33. **Class Definition**: Plaintiff Justin Alicea brings this proposed class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), (b)(3), and (c)(4) on behalf of himself and a Class of others similarly situated, defined as follows:

> All persons who paid for parking using PayByPhone's mobile application within the past four years in the States of California, Florida, Massachusetts, and Washington, within the past three years in New Hampshire, and within the past six years in Pennsylvania.

Excluded from the Class are: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or its parents have a controlling interest and its officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's

counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

34. **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but upon information and belief it is at least hundreds of thousands. As such, individual joinder is impractical.

35. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the proposed Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to, the following:

A. Whether Defendant began to run timers for parking reservations made through its PayByPhone app before Class members had actually confirmed and paid for those reservations;

B. Whether PayByPhone's application interface and payment flow were false, misleading, deceptive, unfair, and/or fraudulent;

C. Whether Plaintiff and the Class were injured by Defendant's conduct; and,

D. Whether Plaintiff and the Class are entitled to restitution, actual and punitive damages, disgorgement of ill-gotten profits, and/or injunctive relief.

36. **Typicality**: Plaintiff's claims are typical of the claims of the Class members in that Plaintiff, like all Class members, has been injured by Defendants' conduct in the same way.

37. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are representative of the claims of the other members of the Class. Plaintiff and the Class members sustained damages as a result of Defendants' conduct. Plaintiff also has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to the Class.

38. **Superiority**: Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all members of the Class is impracticable. The damages suffered by individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the litigation necessitated by Defendants' actions. It would be virtually impossible for individual Class members to obtain effective relief from Defendants' misconduct absent a class action. Further, individual litigation would increase the delay and expense to all parties by requiring repeat adjudication of similar issues. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured. Moreover, there are no material variations in the laws of the states in which members of the Class reside and under which their claims will be pursued; to the extent any variations exist, they do not outweigh the benefits of proceeding in a class action.

39. Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition," including to potentially add subclasses, based on facts learned through additional investigation and in discovery.

## CAUSES OF ACTION

### COUNT I
### Violation of the California Consumers Legal Remedies Act ("CLRA")
### (Cal. Civ. Code § 1770 et seq.)
***On behalf of Plaintiff Alicea, and California members of the Class***

40. Plaintiff and Class members incorporate by reference all preceding and subsequent paragraphs.

41. Plaintiff Alicea brings this claim individually and on behalf of California members of the Class with respect to claims arising within three years prior to the filing of this complaint.

42. Plaintiff Alicea and the California Class members are "consumers" as defined by Cal. Civ. Code § 1761(d), and PayByPhone's services constitute "services" within the meaning of § 1761(b).

43. Defendants violated the CLRA by: (a) Representing that services have characteristics or benefits they do not have, in violation of Cal. Civ. Code § 1770(a)(5); (b) Advertising services with the

intent not to sell them as advertised, in violation of §1770(a)(9); and (c) Representing that a transaction confers or involves rights or obligations that it does not have, in violation of §1770(a)(14).

44. Specifically, Defendants represented that consumers who selected and paid for a defined amount of parking time would receive the full benefit of that time. In fact, Defendants designed the PayByPhone mobile application so that parking sessions commenced before users confirmed the sessions or completed their payments, effectively depriving users of some of the time they selected and paid for. Defendants failed to clearly and conspicuously disclose this practice to users.

45. Defendants' omissions and misrepresentations were material and likely to deceive reasonable consumers. Had Defendants clearly disclosed they would begin charging for parking time before payment was complete, Plaintiff and the California class members would not have proceeded with the transaction or would have taken steps to avoid the charge, such as by paying at a physical parking meter, or initiating the reservation and payment process only when they intended their timers to start.

46. Defendants' conduct was willful, knowing, and undertaken with conscious disregard for the rights of consumers, including Plaintiff and the California class members.

47. As a direct and proximate result of Defendants' violations of the CLRA, Plaintiff and California class members suffered economic injury in the form of overpayment or payment for parking time not received. Plaintiff and the California class members seek injunctive relief, restitution, attorneys' fees, and any other relief the Court deems appropriate under Cal. Civ. Code § 1780(a) and § 1780(e).

48. Plaintiff will promptly provide Defendants with notice of the alleged CLRA violations pursuant to Cal. Civ. Code §1782(a), and if Defendants fail to cure the violations within 30 days, Plaintiff will amend this Count to seek damages.

**COUNT II**
**Violation of the California Unfair Competition Law ("UCL")**
**(Cal. Bus. & Prof. Code § 17200 et seq.)**
***On behalf of Plaintiff Alicea, and California members of the Class***

49. Plaintiff and Class members incorporate by reference all preceding and subsequent paragraphs.

50. Plaintiff Alicea brings this claim individually and on behalf of California members of the Class with respect to claims arising within four years prior to the filing of this complaint.

51. Defendants' conduct constitutes unlawful, unfair, and fraudulent business acts and practices within the meaning of the UCL.

52. **Unlawful**: Defendants' conduct violates the CLRA and FAL, among other laws, and thus constitutes an unlawful business practice under the UCL.

53. **Unfair**: Defendants' practice of initiating paid parking sessions before consumers have completed payment constitutes an unfair business practice in violation of Business and Professions Code § 17200. First, Defendants' practice violates California's well-established public policy favoring transparent consumer pricing and prohibiting the imposition of charges without full disclosure and completed assent, as reflected in, *inter alia*, Cal. Civil Code § 1770(a), Cal. Bus. & Prof. Code §§ 17500 and 17501, and related consumer protection statutes. By starting the parking meter before payment is finalized, Defendants caused Plaintiff and the California class members to pay for parking time they did not receive, undermining California's legislative policies and frustrating consumers' reasonable expectations. Defendants' practice of starting to charge parking time before payment is made is also immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. The substantial injury to Plaintiff and the California class members is not outweighed by any countervailing benefit to them or the public, and Plaintiff and the California class members cannot reasonably avoid and have been harmed by such injury. There are no countervailing benefits to the public from Defendants' commencing a paid service before payment is complete that outweighs the harm to consumers, who are systematically deprived of a portion of what they paid for. Thus, Defendants' practice causes unavoidable economic harm to consumers while serving no legitimate public benefit or business purpose aside from revenue extraction.

54. **Fraudulent**: Defendants' conduct was likely to deceive reasonable consumers. A reasonable consumer would believe time starts upon payment confirmation, and Defendants' interface led users to believe their time would begin after confirmation. PayByPhone did not clearly and conspicuously inform consumers that their parking sessions would in fact begin before completing payment.

55. Defendants' app presented the parking transaction in a manner that reasonably conveyed to consumers, including Plaintiff and California class members, that parking time would commence only after payment was finalized. Plaintiff and California class members relied on the app's payment flow, prompts, and confirmation process in initiating the transaction and reasonably believed that no parking time would be charged until payment was complete. Had Defendants clearly disclosed they would begin charging for parking time before payment was complete, Plaintiff and California class members would not have proceeded with the transaction or would have taken steps to avoid the charge, such as by paying at a physical parking meter, or initiating the reservation and payment process only when they intended their timers to start.

56. Plaintiff and the California class members have suffered injury in fact and have lost money as a result of Defendants' unlawful and unfair conduct, including the monetary value of parking time purchased that Plaintiff and California class members never received.

57. California Business and Professions Code section 17203 authorizes this Court to grant equitable relief in the form of restitution and an injunction to redress past acts and to enjoin ongoing acts of unfair competition and unlawful conduct.

58. Plaintiff and the California class members seek restitution in the form of refunds of all amounts unlawfully collected and the disgorgement of Defendants' ill-gotten profits, not exceeding their out-of-pocket losses, as well as injunctive relief, attorneys' fees, and other equitable relief the Court deems just and proper.

**COUNT III**
**Violation of the California False Advertising Law ("FAL")**
**(Cal. Bus. & Prof. Code § 17500 et seq.)**
***On behalf of Plaintiff Alicea, and California members of the Class***

59. Plaintiff and Class members incorporate by reference all preceding and subsequent paragraphs.

60. Plaintiff Alicea brings this claim individually and on behalf of California members of the Class with respect to claims arising within four years prior to the filing of this complaint.

61. Defendants violated California's FAL by disseminating false and misleading advertising through affirmative representations made on its parking application's checkout screen. When Plaintiff

and the California class members purchased parking through Defendants' app, the app affirmatively displayed on the checkout screen a specific, fixed parking duration selected by the user (e.g., "15 minutes," "2 hours"). That duration is presented as the amount of parking time the consumer will be purchasing when they click "Pay." This stated parking duration is displayed as a definite, static quantity and it remains unchanged throughout the checkout process, regardless of how long the consumer remains on the payment-selection screen prior to clicking "Pay."

62. Defendants' conduct was part of a uniform and ongoing business practice and resulted in Defendants obtaining money from Plaintiff and the Class by means of false advertising. By affirmatively displaying a fixed parking duration at checkout, Defendants represent to reasonable consumers that (a) the displayed duration reflects the total amount of parking time they will receive, and (b) the purchased parking time will begin only after payment is completed, such that the consumer receives the full duration shown at checkout.

63. These representations are false and misleading because, in reality, Defendants initiate the parking session and begin charging for parking time before payment is completed, such that a portion of the stated parking duration is consumed during the checkout and payment process itself. As a result, Plaintiff and the California class members receive less parking time than the fixed duration Defendants affirmatively represent at checkout, rendering Defendants' stated parking duration untrue and misleading at the time it is presented.

64. The misleading nature of Defendants' affirmative representation and failure to disclose that parking time would begin running prior to payment is reinforced by the app's transaction design, which depicts the selected duration as static and finalized prior to payment, thereby obscuring the fact that paid parking time has already begun to run. Thus, the app's design reinforced reasonable consumer expectations that parking would begin after payment was completed.

65. Defendants failed to disclose this practice at the point of sale and omitted material information necessary to prevent their representations from being misleading. Defendants had a duty to disclose because Defendants affirmatively represented that Plaintiff and California class members would receive the full duration of parking they selected and purchased, but failed to disclose that the parking time was being charged prior to payment. Additionally, Defendants had exclusive knowledge

of material facts—that the app would commence parking time prior to payment—and those facts were not reasonably accessible to consumers, including Plaintiff and California class members.

66. Defendants knew or, in the exercise of reasonable care, should have known that displaying a fixed parking duration at checkout while initiating the parking session before payment was completed would mislead reasonable consumers, including Plaintiff and California class members, regarding the amount of parking time they were purchasing.

67. Defendants' misrepresentations and omissions were material because the duration of parking time purchased and whether paid time begins before or after payment is a fact a reasonable consumer would consider important in deciding whether to complete the transaction and how much parking to purchase.

68. Plaintiff and California class members viewed and reasonably relied on Defendants' misleading app design and affirmative representation of a fixed parking duration on the checkout screen when deciding to complete payment. Had Defendants clearly disclosed they would begin charging for parking time before payment was complete, Plaintiff and California class members would not have proceeded with the transaction or would have taken steps to avoid the charge, such as by paying at a physical parking meter, or initiating the reservation and payment process only when they intended their timers to start.

69. As a direct and proximate result of Plaintiff's and the California class members' reliance on Defendants' false and misleading advertising, Plaintiff's and the California class members' lost money by paying for parking time Defendants did not provide, conferring standing under Business and Professions Code section 17535.

70. Defendants' misleading app design and checkout display were uniformly presented to Plaintiff and all California class members. The misleading nature of Defendants' advertising is capable of determination on a class-wide basis because it arises from Defendants' standardized app interface and transaction flow.

71. Defendants' false advertising is ongoing and poses a continuing threat to consumers.

72. Plaintiff and California class members seek injunctive relief requiring Defendants to cease misrepresenting the duration of parking time purchased and to ensure that paid parking time does not begin until payment is completed.

73. Plaintiff and California class members also seek restitution of money obtained by Defendants as a result of its false advertising.

**COUNT IV**
**Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA")**
**(Fla. Stat. § 501.201 et seq.)**
***On behalf of Florida class members only***

74. Plaintiff and Class members incorporate by reference all preceding and subsequent paragraphs.

75. Plaintiff brings this claim only in a representative capacity on behalf of the Florida members of the Class, not in his individual capacity, with respect to claims arising within four years prior to the filing of this complaint.

76. Defendants are engaged in "trade or commerce" within the meaning of Fla. Stat. §§ 501.203(8).

77. Defendants' acts and practices occurred in the conduct of trade or commerce and affected Florida consumers.

78. Defendants engaged in deceptive acts or practices in violation of Fla. Stat. § 501.204 by representing, expressly and by implication, that parking charges would begin only after Florida class members completed payment through Defendants' parking application. Specifically, Defendants' app interface, payment flow, and transaction prompts reasonably conveyed to consumers that parking time would not commence until payment was finalized and confirmed. Contrary to its representations, Defendants initiated paid parking sessions and began charging consumers for parking time before payment was completed, causing consumers to lose paid time they never received.

79. Defendants' representations and omissions were material because a reasonable consumer would consider the timing of parking charges important in deciding whether and how to purchase parking. Defendants' representations were likely to mislead consumers acting reasonably under the circumstances and did, in fact, mislead the Florida class members.

80. Defendants also engaged in unfair acts or practices in violation of Fla. Stat. § 501.204 by systematically charging Florida class members for parking time before payment was completed. Defendants' practice is unfair because it causes substantial and unavoidable economic injury to consumers, deprives consumers of the full value of the parking services purchased, shifts the risk of payment processing delays entirely onto consumers, and serves no legitimate consumer-facing purpose aside from revenue extraction.

81. The Florida class members had no meaningful ability to avoid this injury because Defendants exclusively controlled the timing and mechanics of the parking transaction through their app, and Defendants' practice is difficult to discover. The harm to consumers from Defendants' practice outweighs any purported benefit and offends public policy favoring fair and transparent consumer transactions.

82. As a direct and proximate result of Defendants' unfair and deceptive acts or practices, the Florida class members suffered actual damages, including overpayment and loss of paid parking time that Defendants did not provide. The Florida class members seek injunctive relief, actual damages, attorneys' fees, and costs pursuant to Fla. Stat. § 501.211 and § 501.2105.

**COUNT V**
**Violation of the Massachusetts Consumer Protection Act**
**(Mass. Gen. Laws ch. 93A, § 9)**
***On behalf of Massachusetts class members***

83. Plaintiff and Class members incorporate by reference all preceding and subsequent paragraphs.

84. Plaintiff brings this claim only in a representative capacity on behalf of the Massachusetts members of the Class, not in his individual capacity, with respect to claims arising within four years prior to the filing of this complaint.

85. Defendants engaged in trade or commerce within the Commonwealth of Massachusetts, as defined by Mass. Gen. Laws ch. 93A, § 1(b). Defendants' acts and practices occurred in the conduct of trade or commerce and harmed consumers residing in Massachusetts acting primarily for personal, family, or household purposes.

86. Defendants committed deceptive acts and practices in violation of Mass. Gen. Laws ch. 93A, § 2, by failing to clearly disclose that the parking session began before payment was completed and by leading users to believe they were receiving more time than they actually were.

87. Defendants' omissions and representations through its app interface, transaction flow, and payment prompts reasonably conveyed to Massachusetts class members that parking time would begin only after payment was finalized and confirmed. In reality, Defendants initiated paid parking sessions and began charging consumers for parking time before payment was completed, resulting in consumers paying for time they did not receive.

88. Defendants failed to disclose this practice at the point of sale and omitted material information necessary to prevent their representations from being misleading.

89. These representations and omissions were material, as a reasonable consumer would consider the timing of parking charges important when deciding whether and how to purchase parking.

90. The Massachusetts class members reasonably relied on Defendants' representations and omissions in purchasing parking through Defendants' app. Had Defendants clearly disclosed they would begin charging for parking time before payment was complete, Massachusetts class members would not have proceeded with the transaction or would have taken steps to avoid the charge, such as by paying at a physical parking meter, or initiating the reservation and payment process only when they intended their timers to start.

91. Defendants also engaged in unfair acts or practices in violation of Mass. Gen. Laws ch. 93A, § 2 by systematically charging consumers for parking time before payment was completed.

92. Defendants' conduct was unfair because it caused substantial and unavoidable economic injury to consumers, deprived consumers of the full value of the parking services purchased, and served no legitimate consumer-facing purpose other than revenue extraction.

93. Consumers had no meaningful ability to avoid this injury because Defendants alone controlled when parking sessions began. Thus, Defendants' conduct unfairly took advantage of Defendants' exclusive control over the timing and mechanics of the transaction.

94. Defendants' conduct violated established Massachusetts' public policy favoring fair, transparent, and honest consumer transactions and exceeded the bounds of acceptable business practices.

95. As a direct and proximate result of Defendants' unfair and deceptive acts and practices in violation of the Mass. Gen. Laws, the Massachusetts class members suffered economic damages in the form of paying for services not received. These violations were willful or knowing, entitling Massachusetts class members to multiple damages under Mass. Gen. Laws ch. 93A, § 9(3). Pursuant to Mass. Gen. Laws ch. 93A, § 9, the Massachusetts class members seek actual damages, injunctive relief, multiple damages for willful violations, and attorneys' fees and costs.

96. Plaintiff was not required to provide Defendants with a written demand letter prior to filing suit on behalf of the Massachusetts class members because Mass. Gen. Laws ch. 93A, § 9(3) provides that the demand requirements "shall not apply . . . if the prospective respondent does not maintain a place of business or does not keep assets within the commonwealth." To Plaintiff's knowledge, Defendants neither maintain a place of business nor keep assets in Massachusetts. Accordingly, the statutory demand requirement is excused.

**COUNT VI**
**Violation of the Washington Consumer Protection Act ("WCPA")**
**(Wash. Rev. Code § 19.86 et seq.)**
***On behalf of Washington class members***

97. Plaintiff and Class members incorporate by reference all preceding and subsequent paragraphs.

98. Plaintiff brings this claim only in a representative capacity on behalf of the Washington members of the Class, not in his individual capacity, with respect to claims arising within four years prior to the filing of this complaint.

99. Defendants engaged in trade or commerce within the meaning of Wash. Rev. Code § 19.86.010(2).

100. Defendants' acts and practices occurred in trade or commerce and directly and proximately caused injury to Washington consumers.

101. Defendants engaged in deceptive acts or practices in violation of the WCPA by representing, expressly and by implication, that parking charges would begin only after consumers completed payment. Defendants' app interface, transaction flow, and payment prompts reasonably conveyed to Washington class members that paid parking time would not commence until payment was finalized and confirmed. Contrary to these representations, Defendants initiated paid parking sessions and began charging consumers for parking time before payment was completed, resulting in consumers paying for time they never received.

102. Defendants failed to disclose this practice at the point of sale and omitted material information necessary to prevent their representations from being misleading. Defendants' representations and omissions had the capacity to deceive a substantial portion of the public, including Washington class members.

103. Defendants also engaged in unfair acts or practices in violation of the WCPA by systematically charging consumers for parking time before payment was completed. This practice is unfair because it causes substantial and unavoidable economic injury to consumers, deprives consumers of the full value of the parking services purchased, and serves no legitimate consumer-facing purpose.

104. Defendants' practice exploits Defendants' exclusive control over the timing and mechanics of the parking transaction. Accordingly, Washington class members had no meaningful ability to avoid this injury because Defendants alone controlled when parking sessions began, and Defendants' conduct was difficult to discover.

105. Defendants' unfair and deceptive acts and practices affected the public interest, as required by Wash. Rev. Code § 19.86.093, because Defendants' practices were part of a standardized, uniform business model, Defendants marketed and provided its parking services to thousands of Washington consumers, the challenged conduct had the capacity to and did in fact injure numerous consumers, and Defendants' conduct is ongoing and likely to continue absent judicial intervention.

106. Defendants' conduct was willful, knowing, and part of a repeated course of conduct affecting the public interest.

107. As a direct and proximate result of Defendants' WCPA violations, the Washington class members suffered actual damages in the form of paying for services not received. The Washington

class members' injuries are measurable and compensable and were directly caused by Defendants' conduct. The Washington class members seek injunctive relief, actual damages, treble damages, and reasonable attorneys' fees under Wash. Rev. Code § 19.86.090.

**COUNT VII**
**Violation of the New Hampshire Consumer Protection Act ("CPA")**
**(N.H. Rev. Stat. §§ 358-A:1 et seq.)**
***On behalf of New Hampshire class members***

108. Plaintiff and Class members incorporate by reference all preceding and subsequent paragraphs.

109. Plaintiff Alicea brings this claim solely in a representative capacity on behalf of the New Hampshire members of the Class, not in his individual capacity, with respect to claims arising within three years prior to the filing of this complaint.

110. Defendants qualify as a "person" engaged in "trade or commerce" within the meaning of N.H. Rev. Stat. section 358-A:1(I) & (II). Defendants' acts and practices occurred in the conduct of trade or commerce and affected consumers within the State of New Hampshire.

111. Defendants engaged in deceptive acts or practices by representing, expressly and by implication, that consumers would be charged for parking only after completing payment through Defendants' parking application. More specifically, Defendants violated N.H. Rev. Stat. § 358-A:2(V) by (a) representing that services have characteristics or benefits they do not have, and (b) advertising services with the intent not to sell them as advertised, in violation of § 358-A:2(IX).

112. Defendants' app interface, transaction flow, and payment prompts reasonably conveyed to consumers that paid parking time would commence only after payment was finalized and confirmed. Contrary to these representations, Defendants initiated paid parking sessions and began charging consumers for parking time before payment was completed, resulting in consumers paying for time they did not receive. Defendants failed to disclose this practice at the point of sale and omitted material information necessary to prevent its representations from being misleading.

113. These representations and omissions were likely to mislead a reasonable consumer into expecting that they would receive the full amount of parking time for which they paid. As such, consumers were misled into purchasing a service that did not deliver its full represented value.

Defendants' conduct therefore constituted deceptive acts or practices within the meaning of N.H. Rev. Stat. § 358-A:2.

114. New Hampshire class members reasonably relied on Defendants' representations and omissions that they would receive the full amount of parking they selected and paid for. Had Defendants clearly disclosed they would begin charging for parking time before payment was complete, the New Hampshire class members would not have proceeded with the transaction or would have taken steps to avoid the charge, such as by paying at a physical parking meter, or initiating the reservation and payment process only when they intended their timers to start.

115. Defendants also engaged in unfair acts or practices in violation of N.H. Rev. Stat. § 358-A:2 by implementing and operating a parking payment system that begins accruing paid parking time before consumers, including the New Hampshire class members, have completed the payment process. This practice unfairly disadvantaged consumers by charging them for parking time during a period when they have not yet obtained the benefit of the transaction, while providing no indication that the time they are considering to purchase is already accruing. As a result, consumers were deprived of the full value of the parking services they attempt to purchase, and are required to pay for time that they do not actually receive. Defendants' practice provides no countervailing benefit to consumers and exceeds the bounds of acceptable business conduct in consumer transactions.

116. Consumers had no meaningful ability to avoid this injury because Defendants alone controlled when parking sessions began and when charges accrued, and Defendants' conduct was difficult to discover.

117. Defendants' conduct offended established public policy favoring fair, transparent, and honest consumer transactions and exceeded the bounds of acceptable business practices.

118. Defendants' actions were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of the New Hampshire class members.

119. As a direct and proximate result of Defendants' unfair and deceptive acts and practices, the New Hampshire Class members suffered ascertainable economic damage.

120. The New Hampshire class members seek relief under N.H. Rev. Stat. § 358-A:10, including, but not limited to injunctive relief, damages, treble damages, and attorneys' fees and costs.

**COUNT VIII**
**Violation of the Pennsylvania Deceptive and Unfair Trade Practices and Consumer Protection Law ("UTPCPL")**
**(73 Pa. Stat. §§ 201-1 et seq.)**
***On behalf of Pennsylvania class members only***

121. Plaintiff and Class members incorporate by reference all preceding and subsequent paragraphs.

122. Plaintiff Alicea brings this claim solely in a representative capacity on behalf of the Pennsylvania members of the Class, not in his individual capacity, with respect to claims arising within six years prior to the filing of this complaint.

123. Defendants engaged in unfair and deceptive acts and practices in violation of the UTPCPL by operating a parking payment application that represented to consumers, including Pennsylvania class members, that parking time would begin only after payment was completed and confirmed, while in fact causing parking time to begin running before consumers had completed the payment process. Defendants' conduct amounts to "unfair or deceptive acts or practices" defined in 73 Pa. Stat. § 201-2(4), including (a) representing that services have characteristics or benefits they do not have and (b) advertising services with the intent not to sell them as advertised.

124. Defendants' conduct also violated 73 Pa. Stat. § 201-2(4)(xxi) because Defendants' app creates the false and misleading impression that consumers, including Pennsylvania class members, would receive the full amount of paid parking time reflected in the transaction confirmation, when Defendants' system instead silently deducted time during the payment process itself. This conduct created a likelihood of confusion or misunderstanding as to the nature, characteristics, and duration of the parking services being purchased.

125. Pennsylvania class members justifiably relied on Defendants' representations and omissions concerning when paid parking time would begin. Reasonable consumers using Defendants' parking application would expect—consistent with ordinary commercial practice—that paid parking time would commence only after payment was successfully completed and confirmed.

126. In reliance on Defendants' deceptive conduct, Pennsylvania class members proceeded to initiate and complete parking transactions through Defendants' application, reasonably believing that the full duration of paid parking time would be available for use and enforcement purposes. Had Defendants clearly disclosed they would begin charging for parking time before payment was complete, Pennsylvania class members would not have proceeded with the transaction or would have taken steps to avoid the charge, such as by paying at a physical parking meter, or initiating the reservation and payment process only when they intended their timers to start.

127. As a direct and proximate result of Defendants' deceptive practices, Pennsylvania class members suffered ascertainable losses of money and property, including but not limited to: (a) payment for parking time that was never received; (b) diminution in the value of the parking services purchased; and (c) overcharges resulting from Defendants' premature commencement of parking time. These losses are real, measurable, and non-speculative, and constitute an ascertainable loss under the UTPCPL.

128. Defendants' conduct was willful and knowing. Defendants designed, implemented, and maintained the parking application's timing and charging mechanisms with knowledge that parking time was being deducted before payment was completed, and continued this practice despite its deceptive effect on consumers.

129. The Pennsylvania class members seek relief under 73 Pa. Stat. § 201-9.2(a), including, but not limited to actual damages, treble damages, and attorneys' fees and costs.

**COUNT IX**
**Common Law Fraud by Omission**
***On behalf of Plaintiff and the Class***

130. Plaintiff and Class members incorporate by reference all preceding and subsequent paragraphs.

131. Plaintiff Alicea brings this claim individually and on behalf of the Class.

132. Defendants owed a duty to disclose material facts about when parking sessions would begin, because Defendants: (a) Had exclusive knowledge of the actual timing logic and did not share that knowledge with users; (b) Actively concealed this fact through its interface design; (c) Made partial

representations (e.g., displaying duration and cost) that created a misleading impression in the absence of full disclosure.

133. The omitted fact—that the timer would start before the user completed payment—was material to consumers. Plaintiff and Class members reasonably expected they would receive the amount of time they selected and paid for, and would not have used the service in the same way or at all had they known the truth about Defendants' practice of starting the clock prior to payment.

134. Additionally, Defendants made materially misleading representations regarding the duration of time that Plaintiff would be purchasing. The purchase confirmation screen depicts the duration of time the user selected to purchase on the previous screen, be it 15 minutes, an hour, or another duration. Depicting the time duration the user intended to purchase reaffirms consumers' reasonable expectation that they will be purchasing and receive that full duration upon purchase. Thus, Defendants' checkout flow creates the net impression that the user will receive the full duration of the parking time they selected beginning at the time they click "pay."

135. Defendants' fraudulent conduct was knowing and intentional. Through its omissions and misrepresentations, Defendants intended to induce and actually induced reliance. By failing to adequately disclose that the timer was running prior to payment, Defendants induced Plaintiff's and the Class members' continued use of the application because Plaintiff and the Class reasonably believed they would receive the entire parking time for which they paid. As a result, Plaintiff and Class members suffered economic injury.

136. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's rights and well-being for the purpose of enriching Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

137. Defendants' fraud caused damage to Plaintiff and the Class, who as a result are entitled to damages, costs, and attorneys' fees.

**COUNT X**
**Unjust Enrichment**
***On behalf of Plaintiff and the Class***

138. Plaintiff and Class members incorporate by reference all preceding and subsequent paragraphs.

139. Plaintiff Alicea brings this claim individually and on behalf of the Class.

140. Plaintiff and the Class conferred a benefit on Defendants in the form of money paid for parking sessions. Defendants knowingly accepted and retained these payments.

141. However, Defendants did not provide the full value of services promised. Defendants began the parking session timer before payment was completed, thereby depriving users of part of the service for which they paid.

142. By reason of Defendants' wrongful conduct, Defendants have benefited from receipt of improper funds. Defendants' retention of these funds under these circumstances is unjust and inequitable.

143. Because Defendants have been unjustly enriched at the expense of Plaintiff and the Class, equity and good conscience require restitution of the amounts wrongfully retained by Defendants.

**COUNT XI**
**Conversion**
***On behalf of Plaintiff and the Class***

144. Plaintiff and Class members incorporate by reference all preceding and subsequent paragraphs.

145. Plaintiff Alicea brings this claim individually and on behalf of the Class.

146. Plaintiff and the Class had a right to possess the full value of the parking time they selected and paid for. By beginning the parking session before payment was completed, Defendants intentionally interfered with and exercised control over a portion of the value of that payment.

147. Defendants converted specific, identifiable sums of money from Plaintiff and each Class member on each parking transaction. At the time of each transaction, Plaintiff and each Class member had paid Defendants the full parking fee, and Defendants thereafter retained a portion of those funds without providing the corresponding parking services. Put differently, Defendant converted the

monetary value of the difference between the time paid and the time received, thereby converting funds they had no right to retain. While the precise amount converted from Plaintiff and each Class Member varies, the amounts are readily ascertainable from Defendants' transaction records, and damages may be calculated on a class-wide basis using a common formula. Defendants' liability does not depend on contractual interpretation or discretionary calculation, but on the mechanical retention of specific portions of parking payments already made by Plaintiff.

148. Defendants' actions were unauthorized and deprived Plaintiff and Class members of the use and value of their money. Plaintiff and the Class never consented to Defendants' taking their parking payment without providing the full value of the time purchased. Defendants wrongfully retained dominion and control over Plaintiff's and the Class's monetary property—specifically, the portion of each parking payment that Defendant had no right to retain. This unauthorized control and dominion constitute conversion under the common law.

149. Defendants' acts of conversion were willful, malicious, and undertaken in conscious disregard of Plaintiff's and the Class's rights. Defendants knowingly exercised dominion and control over Plaintiff's money without authorization by intentionally retaining and appropriating funds representing paid parking time that Plaintiff did not receive. Defendants were aware that their system caused parking time to be deducted and charged before payment was completed, yet deliberately implemented, maintained, and continued this practice as a matter of policy for their own financial benefit.

150. Defendants' conduct was not the result of mistake, accident, or good-faith dispute, but instead reflected a calculated decision to retain consumers' funds despite knowing that the funds were not rightfully owed. Such conduct was oppressive, fraudulent, and carried out with conscious disregard for the rights of Plaintiff and the Class.

151. As a direct and proximate result, Plaintiff and Class members have suffered damages in the form of lost monetary property and interest.

152. By reason of the foregoing, Defendant is liable for conversion and Plaintiff and the Class seek damages equal to the value of the money wrongfully converted, with interest, along with punitive damages in an amount sufficient to punish Defendants and to deter similar misconduct in the future.

**COUNT XII**
**Money Had and Received**
***On behalf of Plaintiff and the Class***

153. Plaintiff and Class members incorporate by reference all preceding and subsequent paragraphs.

154. Plaintiff Alicea brings this claim individually and on behalf of the Class.

155. Defendants have received money from Plaintiff and Class members intended as payment for defined durations of parking time. However, Defendants did not use the money for the intended purpose because they failed to deliver the full service corresponding to the amount received. Defendants have not returned the money that Plaintiff and Class members paid for parking time that they never received.

156. Defendants should not be allowed to retain money it received for services it did not fully render. In equity and good conscience, Defendants should return money paid by Plaintiff and Class members for which Defendants provided no corresponding benefit.

157. Plaintiff and the Class seek restitution of the difference between what they paid and the fair value of the services actually received.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Justin Alicea, individually and on behalf of the Class, prays for the following relief:

(a) An order certifying the Class as defined above, appointing Plaintiff as the representative of the Class, and appointing his counsel as Class Counsel;

(b) An order declaring that Defendant's actions, as set out above, are unlawful, as specified above;

(c) An injunction requiring Defendant to cease all unlawful activities;

(d) An award of actual or statutory minimum damages, multiple damages, disgorgement of profits, punitive damages, costs, and attorneys' fees; and,

(e) Such other and further relief that the Court deems reasonable and just.

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

**JUSTIN ALICEA,** individually and on behalf of all others similarly situated,

Dated: February 11, 2026

By: */s/ Yaman Salahi*

Yaman Salahi (SBN 288752)
yaman@salahilaw.com
Nicole Cabañez (SBN 365099)
nicolec@salahilaw.com
Taylor Applegate (SBN 357742)
taylora@salahilaw.com
SALAHI PC
505 Montgomery Street, 11th Floor
San Francisco, CA 94111
Tel: (415) 236-2305

*Counsel for Plaintiff and the proposed Class*