United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JUSTIN ALICEA,
Plaintiff,

v.

PAYBYPHONE US INC., et al.,
Defendants.

Case No. 26-cv-01266-WHO

**ORDER DENYING MOTION TO COMPEL ARBITRATION; GRANTING MOTION TO DISMISS**

Re: Dkt. Nos. 23, 25

Plaintiff Justin Alicea brings this action on behalf of a putative multi-state class of PayByPhone subscribers. He alleges that defendants PayByPhone US Inc. and PayByPhone Technologies Inc. (together, "PayByPhone") have "misle[]d[] consumers by starting street parking meter times before consumers have confirmed and paid for a transaction." Complaint ("Compl.") [Dkt. No. 1]. PayByPhone now moves to compel arbitration, asserting that Alicea would have had to agree to the arbitration provision in PayByPhone's terms of service to sign up for an account on the platform. Alicea contends that he did not receive notice of—and did not assent to—the terms of service and that, even if there was an agreement, the arbitration provision is still unenforceable because it is substantively and procedurally unconscionable. PayByPhone also moves for dismissal under Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6).

Because it is not clear that Alicea manifested consent to the terms of service, PayByPhone's motion to compel arbitration is DENIED. But as pleaded, the Complaint is implausible: PayByPhone's app is not deceptive or misleading. Its motion to dismiss is GRANTED with leave to amend. Alicea shall file any amended complaint no later than by October 1, 2026.

## BACKGROUND

### I. Factual Background

#### A. PayByPhone Account Creation

PayByPhone Technologies Inc. "offers payment-by-phone services for street parking in over 1,300 cities across the world." Compl. ¶ 7. PayByPhone US Inc. is its "wholly-owned subsidiary" that provides these services to consumers in the United States. *Id.* ¶ 8. Alicea resides in San Francisco, California and has regularly used PayByPhone to pay for parking since at least 2020. *Id.* ¶ 6; Declaration of Justin Alicea ("Alicea Decl.") [Dkt. No. 31] ¶ 4. While Alicea asserts that he does not remember exactly when his account was created, PayByPhone submitted a declaration attesting that Alicea created a PayByPhone account on December 6, 2019 using his Facebook login information and linking the account to his existing Facebook account. Declaration of Nicholas Hamill ("Hamill Decl.") [Dkt. No. 34-1] ¶¶ 3, 6-7. The same email and phone number used to create the 2019 account were also used to create a different account on May 4, 2026[1] using the Google Sign-In option. *Id.* ¶ 4.

#### B. Terms of Service

At the time that Alicea created his account in 2019, the PayByPhone terms of service contained the following provisions:

> **13. Notice containing information about your right to dispute errors**
> In case of errors or questions about Transactions on your Account, contact our Customer Support Center or email us at support@paybyphone.com as soon as you can, including if you think the statement or receipt is wrong or if you need more information about a transaction listed on the statement or receipt. Under most circumstances, we will connect you to the Facilities Operator whose charges resulted in the error or whose transaction resulted in questions. Disputes involving operators of parking facilities will be resolved pursuant to their procedures.
>
> For disputes that we (rather than a Facilities Operator) are involved in, we must hear from you no later than 30 days after the transaction in question has been made available to you on the online statement. The following information must be contained in that notice:
>
> - Your name, user name and phone number used for the

[1] This lawsuit was filed on February 11, 2026. For the purposes of the motions currently under consideration, I will look at the terms of service at the time of the 2019 account creation since the second account was created after the lawsuit was filed.

United States District Court
Northern District of California

> Account.
>
> - Description of the error or the transaction you are unsure about and an explanation as clearly as possible of why you believe it is an error or why you need more information.
> - The amount in local currency of the suspected error
>
> If you tell us verbally, we may require that you send us your complaint or question in writing within 10 business days. Generally, we will tell you the results of our investigation within 10 business days after we hear from you and will correct any error promptly. If we need more time, however, we may take up to 45 calendar days to investigate your complaint or question.
>
> If we decide there was no error, we will send you a written explanation within three business days, after we finish our investigation. You may ask for copies of documents that we used in our investigation.
>
> **14. Dispute resolution and confidential arbitration**
> Any dispute relating in any way to the services offered by PayByPhone not resolved in accordance with the preceding Section 13 shall be submitted to confidential arbitration in Vancouver, British Columbia, except that, to the extent you have in any manner violated or threatened to violate PayByPhone's intellectual property rights . . . .

Exhibit 4 to Hamill Decl. [Dkt. No. 34-5].

In 2019, a user signing up for a PayByPhone account using Facebook would be directed to Facebook during the sign in process to authenticate his or her account.




Exhibit 3 to Hamill Decl. [Dkt. No. 34-4]. At the bottom of this page are links to PayByPhone's privacy policy and terms of service. *Id.* The user does not need to review these terms before proceeding.

### C. PayByPhone App Use

Once a user has a PayByPhone account, he or she can use the app to begin parking. To start the parking process, a user opens the app and enters a location code. While the user does not need to be in this location to use this code, the code is usually identified from "parking meters, street signs, or other nearby placards." Compl. ¶ 21. The location determines the amount of fees that will charged for parking. The user then enters the total requested parking duration—e.g. 15 minutes, 1 hour—although the user may add time to an existing parking session as he or she chooses. *Id.* ¶ 22. After the user clicks "Confirm duration," he or she is presented with a screen for payment which also includes the expiration time for the parking. *Id.* ¶ 23. Underneath the expiration time, in small print, is the duration that the user had selected. The expiration time is calculated from when the user selects the desired duration and does not change even if the user takes several minutes to complete payment. *Id.* ¶¶ 24-27.




*Id.* ¶ 27, Figure 4. Thus, by the time the user submits payment, the remaining parking time may be less than what was originally selected.




*Id.* ¶ 29, Figure 5.

Alicea alleges that this process is "misleading" and results in users being "shortchanged for parking duration, paying for more time than they ultimately receive." *Id.* ¶ 30. He further asserts that "[o]n at least one occasion, [he] ha[d] been shortchanged at least a minute for his parking reservations," resulting in economic injury. *Id.* ¶ 8. He alleges that "[h]ad Defendants clearly disclosed that they would begin charging for parking time before payment was complete, [he] would not have proceeded with the transaction or would have taken steps to avoid the charge, such as by paying at a physical parking meter or initiating the reservation and payment process only when he intended his timer to start." *Id.*

## II. Procedural History

Alicea filed a class action complaint on February 11, 2026 on behalf of other similarly situated consumers "who paid for parking using PayByPhone's mobile application within the past four years in the States of California, Florida, Massachusetts, and Washington, within the past three years in New Hampshire, and within the past six years in Pennsylvania." *Id.* ¶ 33. Alicea asserts twelve causes of action under various state consumer protection laws: Count I – Violation of the California Consumers Legal Remedies Act ("CLRA") (Cal. Civ. Code § 1770 *et seq.*); Count II – Violation of the California Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200 *et seq.*); Count III – Violation of the California False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500 *et seq.*); Count IV – Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") (Fla. Stat. § 501.201 *et seq.*); Count V – Violation of the Massachusetts Consumer Protection Act (Mass. Gen. Laws ch. 93A, § 9); Count VI – Violation of

United States District Court
Northern District of California

the Washington Consumer Protection Act ("WCPA") (Wash. Rev. Code § 19.86 *et seq.*); Count VII – Violation of the New Hampshire Consumer Protection Act ("CPA") (N.H. Rev. Stat. §§ 358-A:1 *et seq.*); Count VIII – Violation of the Pennsylvania Deceptive and Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (73 Pa. Stat. §§ 201-1 *et seq.*); Count IX – Common Law Fraud by Omission; Count X – Unjust Enrichment; Count XI – Conversion; Count XII – Money Had and Received. He seeks certification of the class as well as equitable relief, damages, and attorneys' fees and costs.

PayByPhone moved to compel arbitration or in the alternative to dismiss Alicea's claims. Motion to Compel Arbitration ("MTC") [Dkt. No. 23]; Motion to Dismiss ("MTD") [Dkt. No. 25]. Alicea opposed both motions. Opposition to Motion to Compel ("MTC Oppo.") [Dkt. No. 29]; Opposition to Motion to Dismiss ("MTD Oppo.") [Dkt. No. 32]. PayByPhone replied. Reply ISO Motion to Compel ("MTC Reply") [Dkt. No. 34]; Reply ISO Motion to Dismiss ("MTD Reply") [Dkt. No. 33]. Alicea filed objections to PayByPhone's reply to the MTC and requested leave to file a sur-reply, which is granted below. Sur-Reply [Dkt. No. 36-1]; Objections [Dkt. No. 35].

## LEGAL STANDARD

### I. Motion to Compel Arbitration

The Federal Arbitration Act ("FAA") governs the motion to compel arbitration. 9 U.S.C. §§ 1 *et seq.* Under the FAA, a district court determines: (i) whether a valid agreement to arbitrate exists and, if it does, (ii) whether the agreement encompasses the dispute at issue. *Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1012 (9th Cir. 2004). "To evaluate the validity of an arbitration agreement, federal courts should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1170 (9th Cir. 2003) (internal quotation marks and citation omitted).

If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement." 9 U.S.C. § 4. "Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 719 (9th Cir. 1999).

## II. Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the Court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

If the court dismisses the complaint, it "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). In making this determination, the court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).

# DISCUSSION

## I. Motion to Compel Arbitration

Alicea does not dispute PayByPhone's arguments that the scope of the arbitration agreement would reach his claims in this case. Instead, he argues that the arbitration agreement is not valid because PayByPhone did not provide reasonably conspicuous notice of the existence of

United States District Court
Northern District of California

the arbitration agreement and he never provided unambiguous, manifest assent. He also argues that even if he is found to have assented to the agreement, the terms of the agreement are both procedurally and substantively unconscionable.[2]

**A. Objections and Sur-Reply**

Alicea objects to PayByPhone's reply in support of its motion to compel arbitration, arguing that it improperly raises new arguments and evidence not provided in the opening brief. He seeks leave to file a sur-reply to respond to the new evidence raised by PayByPhone.

PayByPhone's reply deviates significantly from its opening brief and introduces evidence that should have been included in the opening brief. PayByPhone offers no explanation why this information was not included in the opening brief other than to say that it was provided as a response to the arguments in Alicea's opposition. Opposition to Motion for Leave to File a Sur-Reply [Dkt. No. 38]. Given that the crux of the dispute between the parties is whether Alicea entered into a contract with PayByPhone, it is baffling why PayByPhone would not affirmatively introduce evidence of Alicea's exact sign-up process if it had access to such evidence.

In such circumstances, courts will usually not consider the improperly submitted evidence. *See Dawson v. Target Corp.,* No. 3:24-cv-08167-AMO, 2025 WL 1651940, at *2 (N.D. Cal. June 11, 2025) ("Target bore the burden to demonstrate its entitlement to relief in its opening brief, and it had the opportunity to disclose this evidence from the outset . . . . [T]hey may not use their reply briefs to introduce new facts to argue how and when [plaintiff] supposedly assented to arbitration. The Court refuses to consider this improperly submitted evidence."); *see also Ma v. Golden State Renaissance Ventures, LLC*, No. 3:21-cv-00856-WHO, 2021 WL 2190912 at *4, n.2 (N.D. Cal. May 31, 2021) ("Because [the evidence] could and should have been submitted with the motion and the failure deprived the plaintiffs of a fair opportunity to respond, I strike it."). In the interest of efficiency, I will consider the evidence filed by PayByPhone despite the impropriety and GRANT Alicea's motion for leave to file a sur-reply. As described below, taking PayByPhone's evidence at face value, the motion to compel arbitration must be denied.

---

[2] Neither party disputes that California law is applicable here. MTC Oppo. at 9.

**B. Condition Precedent**

PayByPhone argues in both the motion to compel and the motion to dismiss that the terms of service contained a requirement that a user participate in informal dispute resolution procedure before submitting any claims to arbitration. MTC at 8-9; MTD at 4. It asserts that this informal dispute resolution procedure is set out in section 13 of the terms of service and highlights seemingly mandatory language such as "[f]or disputes that we (rather than a Facilities Operator) are involved in, we **must** hear from you no later than 30 days after the transaction in question has been made available to you on the online statement." (emphasis added). MTC Reply at 13. It contends that this section combined with the sentence in section 14—"[a]ny dispute relating in any way to the services offered by PayByPhone not resolved in accordance with the preceding Section 13 shall be submitted to confidential arbitration . . . ,"—makes it clear that the procedure in section 13 is a required first step.

Not so. Reading the two provisions together, there is no strong indication that the procedure outlined in section 13 must be completed before moving to arbitration under section 14. As Alicea points out, the cases cited by PayByPhone provide examples of language much more explicit than the language found here. *See e.g.*, *Purple Innovation, LLC v. Advanced Comfort Techs., Inc.*, No. 2:20-cv-00811-JNP-CMR, 2021 WL 4440488, at *1 (D. Utah Sept. 28, 2021) ("**Before any necessary legal action is pursued** by one Party against another Party of this Agreement pertaining to this Agreement or any alleged breach of this Agreement . . . **any such dispute will be raised in a written notice** as provided in this paragraph above.") (emphasis added); *Brosnan v. Dry Cleaning Station Inc.*, No. C-08-02028 EDL, 2008 WL 2388392, at *1 (N.D. Cal. June 6, 2008 ("[T]he Company and the Franchisee each **agree to enter into mediation** of all disputes involving this Agreement or any other aspect of the relationship, for a minimum or four (4) hours, **prior to initiating any legal action against the other.**") (emphasis added).[3] It is at least ambiguous whether it was a required first step and I will not bar consideration of the rest

[3] In the other case cited by PayByPhone, *B & O Mfg., Inc. v. Home Depot U.S.A., Inc.*, the parties did not dispute that the agreement "require[d] mediation as a condition precedent to filing a claim . . . ." No. C 07-02864 JSW, 2007 WL 3232276, at *8 (N.D. Cal. Nov. 1, 2007).

of the motion to compel or the motion to dismiss on this basis.

**C. Notice and Consent**

The Ninth Circuit in *Chabolla* set out the four different types of internet-based agreements :

> In the world of internet contracts, there are browsewrap, clickwrap, scrollwrap, and sign-in wrap agreements, each of which purport to bind users through different "assent" mechanisms. In a browsewrap, the "user accepts a website's terms of use merely by browsing the site," although those terms are not always immediately apparent on the screen. Courts consistently decline to enforce browsewraps. In a clickwrap, the website presents its terms of use in a "pop-up screen" and the user accepts those terms by clicking or checking a box stating she agrees. Courts routinely enforce clickwraps. In a scrollwrap, which provides "the strongest notice" and are usually enforced, the user must scroll through all the terms before the website allows her to click a box to agree. Finally, a sign-in wrap lives somewhere in the middle: the website provides a link to terms of use and indicates that some action may bind the user but does not require that the user actually review those terms.

*Chabolla v. ClassPass Inc.*, 129 F.4th 1147, 1154 (9th Cir. 2025) (internal citations omitted). PayByPhone argues that this contract is best analyzed as a "sign-in wrap." MTC at 7-8. "[A] sign-in wrap agreement may be an enforceable contract based on inquiry notice if (1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms." *Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1014 (9th Cir. 2024).

**1. Reasonably Conspicuous Notice**

In order to determine whether notice was conspicuous, courts look to "the visual design of the webpages and the context of the transaction. Both aspects 'should be considered together.'" *Godun v. JustAnswer LLC*, 135 F.4th 699, 709 (9th Cir. 2025) (internal quotation marks and citations omitted). Visual conspicuousness is informed by various factors "such as the location of the advisal on the webpage or the font size, color, and contrast (against the page's background)," *Godun*, 135 F.4th at 709, as well as the "proximity [of the text] to any box or button the user must click to continue use of the website . . . the obviousness of any associated hyperlink; and . . . whether other elements on the screen clutter or otherwise obscure the textual notice." *Sellers v.*

*JustAnswer LLC*, 73 Cal. App. 5th 444, 473 (2021).

According to the evidence presented in PayByPhone's reply, the terms of service appear for the first time on the bottom part of the Facebook authentication page. Specifically, they are contained in a "blue hyperlink within a one-sentence paragraph written in black font against a white background." MTC Reply at 7. This hyperlink is under "instructions for learning more about PayByPhone's services," and the button that a new user must click to continue activating the account. *Id.* at 7-8. PayByPhone argues that this set up is similar to the placement of the terms of service I found sufficient in *Blackburn v. ClassPass USA LLC*, No. 25-CV-06109-WHO, 2026 WL 962734, at *2 (N.D. Cal. Apr. 9, 2026):







There are some similarities between the placement and prominence of the terms of service on these screens, especially in terms of font color and proximity to the "continue" button. But there are some key differences. The terms of service appear not once but twice on the sign up screen from *Blackburn*. The screen in *Blackburn* also contains significantly less other text between the "continue" button and the hyperlinked terms of service, making the terms of service more immediately eye-catching than PayByPhone's screen.

"Together with the visual prominence of an advisal," courts must also consider the "full



United States District Court
Northern District of California

context of the transaction" including whether the type of transaction contemplates entering into a "continuing, forward-looking relationship that would be governed by terms and conditions." *Godun*, 135 F.4th at 710 (citing *Keebaugh*, 100 F.4th at 1017). Some factors considered are: "(1) whether the transaction contemplates a 'continuing relationship' by creating an account requiring a 'full registration process,'; (2) whether the user is entering a 'free trial,'; (3) whether a user enters 'credit card information,'; and (4) whether the user has downloaded an app on their phone (suggesting consistent accessibility). . . ." *Id.* at 710 (internal citations omitted).

Here, the context would weigh in favor of notice. A PayByPhone user is signing up for an account which implicates a longer-term relationship. PayByPhone is also an app frequently downloaded and used through a user's phone, allowing for consistent access. These factors suggest a continuing relationship that would likely involve terms and conditions. *See Chobolla*, 129 F.4th at 1155. Thus, while the visual presentation of the terms of service is not as noticeable as that in *Blackburn*, the visual presentation coupled with the context provide sufficient reasonably conspicuous notice.

**2. Manifestation of Assent**

"A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 857 (9th Cir. 2022). In *Blackburn*, ClassPass's sign up site contained explicit language that clicking continue would result in agreement. 2026 WL 962734, at *2; *see also Lee v. DoNotPay, Inc.*, 683 F. Supp. 3d 1062, 1071 (C.D. Cal. 2023) ("Additionally, the text around the hyperlink, located immediately below the 'Continue' button which users click to sign in or sign up, explicitly notifies users of the legal significance of hitting the continue button as it states that 'by signing up or signing in, you are agreeing to DoNotPay's Terms and Conditions.'").

The screenshot of the Facebook authentication page here contains no such language. The terms of service and the privacy policy are simply referenced at the very bottom of the page; there is no explicit language that clicking "continue" constitutes agreement to the terms of service or privacy policy. MTC Reply at 7. This is not enough to demonstrate that by going through this

process, a user has manifested unambiguous assent. While there may have been reasonably conspicuous notice, the failure to show assent is fatal to the enforcement of the arbitration provision. Arbitration is, therefore, not compelled in this case and PayByPhone's motion is DENIED.[4]

## II. Motion to Dismiss

### A. No Alleged Deception of Consumers Through Fraudulent Omission

Nearly all of Alicea's claims are based on allegations that PayByPhone's app is deceptive and misleading to consumers. Alicea asserts that PayByPhone reinforced this expectation through some affirmative misrepresentations, specifically that "[t]he purchase confirmation screen depicts the duration of time the user selected to purchase on the previous screen" and that this duration does not change though the parking time is being charged. Compl. ¶¶ 133-34; *see also* MTD Oppo. at 11-12 (characterizing PayByPhone's affirmative misrepresentation as "stating the static time duration—e.g., "Parking for 15 mins"). His primary allegation is that PayByPhone is liable for misleading its users because it omitted to inform them that its app does not behave within a reasonable user's expectations—that, specifically, the selected time for parking begins to run before the user has finished paying. Compl. ¶ 133. Alicea's claims of consumer deception are therefore founded on allegations of fraud by omission.

To determine whether conduct is deceiving under California consumer protection laws,[5] namely the UCL, FAL, and CLRA, courts assess whether a "reasonable consumer" is "'likely to be deceived.'" *Panelli v. Target Corp.*, 172 F.4th 1120, 1124 (9th Cir. 2026); *see also Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). This requires "more than the mere possibility" that defendants' statements [or omissions] will be misunderstood. *Id.* "Rather, the

---

[4] As no valid contract was formed between the parties, I do not need to reach the question of whether the contract was unconscionable.

[5] Alicea brings claims under multiple state consumer protection laws. However, for the purposes of the motion to dismiss, both parties focus on the California statutory laws. Alicea in his opposition notes that "[t]he parallel statutory consumer-protection statutes of the other states plead in the Complaint use similar standards. Though each has its own articulation, all use an objective standard based on whether a reasonable consumer would have been misled." MTD Oppo. at 5. I follow the parties' lead in using California law as the basis for this analysis.

reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496 (2003)).

Where the allegation is primarily that consumers are deceived by omission, a plaintiff must show why the corporation or other actor was required to make an affirmative statement to avoid deception. Under this standard, a defendant may be liable for an omission if (1) it would be "contrary to a representation actually made by the defendant," or (2) it is "'an omission of a fact the defendant was obliged to disclose.'" *So v. HP, Inc.*, No. 22-CV-02327-BLF, 2022 WL 16925965, at *3 (N.D. Cal. Nov. 14, 2022) (quoting *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1012 (N.D. Cal. 2020)). Though the law on the duty to disclose is unsettled, other courts in this district have found that the "defendant only has a duty to disclose when either (1) the defect at issue relates to an unreasonable safety hazard or (2) the defect is material, 'central to the product's function,' and the plaintiff alleges one of the four *LiMandri* factors: (1) the defendant is in a fiduciary relationship with the plaintiff; (2) the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) the defendant actively conceals a material fact from the plaintiff; or (4) the defendant makes partial representations but also suppresses some material facts." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1085 (N.D. Cal. 2022) (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 336 (1997)) (cleaned up).

Alicea argues that his complaint specifically alleges facts supporting that PayByPhone had a duty to disclose.[6] First, he asserts that the highlighted issue is material, as it is "central to the functioning of the App, which has one single use: paying for parking." MTD Oppo. at 12 (citing Compl. ¶ 3). Alicea further alleges that PayByPhone "(a) [h]ad exclusive knowledge of the actual

[6] While Alicea identifies an affirmative misrepresentation—the static duration of time listed on the payment page—this is not a statement that appears to directly contradict the reality that the clock has already started to run. *See Burnett v. Kind LLC*, No. 26-CV-00440-WHO, 2026 WL 1871570, at *4 (N.D. Cal. June 25, 2026) ("In order to state [an omission claim based on an affirmative representation], the representations made by [defendant] must be 'sufficiently contradictory' to the alleged reality of the product . . . ."). Perhaps recognizing this, Alicea's arguments regarding his omission claim mainly focus on the second prong—whether PayByPhone had a duty to disclose.

timing logic and did not share that knowledge with users; (b) [a]ctively concealed this fact through its interface design; (c) [m]ade partial representations (e.g., displaying duration and cost) that created a misleading impression in the absence of full disclosure." Compl. ¶ 132.

This is not persuasive. All of Alicea's allegations rest on the assumption that a reasonable user would approach the app with the expectation that parking would not begin until after payment was finalized because this is how traditional meters function. *See* Compl. ¶ 25 ("A reasonable consumer would not expect that the timer has already started running on them because that is not how traditional parking meters have ever worked."). In other words, Alicea appears to be pleading that the active concealment is derived from a sort of confirmation bias—that every feature of the app that reinforces the consumer's expectations, even if facially neutral, is misleading and thus PayByPhone had a duty to correct it by affirmative statements. MTD Oppo. at 9 ("The deception is heightened by the static label 'Parking for 15 minutes,' which remains visible and static, by design, for as long as the consumer remains on the screen."); *see also* Compl. ¶ 22 (users "are asked how long they want to stay (e.g., 15 minutes), not what time they want to leave (e.g., 4:07 p.m.)"). And Alicea's further logic is that this misconception is so powerful that it cannot be corrected or shaken by the fact that the screen also states in large letters *the exact time at which parking will expire*. *See* Compl. ¶ 27, Figure 4 ("Expires today, 4:07 p.m."). Even if I accepted the general premise of consumer expectation put forth by Alicea, it is hard to see how these circumstances demonstrate a likelihood of consumer confusion because there is, in essence, a corrective disclosure present in the app.

Alicea argues that a reasonable consumer "expects [this time stamp] simply to be a hypothetical or illustrative example based on the time the screen originally loaded. Compl. ¶ 28. He asserts that additional disclosure is needed, such as a live countdown showing the time ticking away as the consumer finishes the transaction. *Id.* at 9 (citing Compl, ¶ 26) ("The Complaint identifies the very disclosure that would cure the problem: "such as with an animated count-down (e.g., 'Parking for 15:00 minutes,' 'Parking for 14:59 minutes,' 'Parking for 14:58 minutes,' etc.)."). Alicea further argues that determination of what would be an adequate disclosure is better left for a finder of fact. *Id.* at 11.

Determination of whether a reasonable consumer would be misled is generally a question of fact "not appropriate for decision [on a motion to dismiss]." *Williams*, 552 F.3d at 938. Here, however, Alicea has failed to allege facts that suggest a true question of whether a reasonable consumer would be misled. Other than generic statements about the history of parking meters, Alicea does not offer any specific facts to support that the reasonable consumer would find the expiration time to be anything but an accurate statement of the true expiration time. His allegations are insufficient to show an actionable omission that deceived PayByPhone's consumers.

**B. No Cognizable Injury**

If I concluded that Alicea had identified an actionable omission, he still failed to plead facts supporting an adequate injury. Under the UCL and the FAL, a plaintiff must demonstrate "some form of economic injury" as a result of his transactions with the defendant. *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323 (2011)). The California Supreme Court in *Kwikset* observed that, to show economic injury, "[a] plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary." 51 Cal. 4th at 323. The CLRA does not require a "economic injury" but still requires a showing that "some kind of damage has result[ed]" beyond the fact of being subject to an unlawful practice. *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 641 (2009).

The injury alleged by Alicea—that users of the PayByPhone app received less parking time than they had paid for—is cognizable in theory within the meaning of *Kwikset*. But the facts as set forth in the complaint are conclusory and do not plausibly establish that Alicea suffered any such injury. *See, e.g.*, Compl. ¶ 6 ("On at least one occasion, Mr. Alicea has been shortchanged at least a minute for his parking reservations. As a result, Mr. Alicea received less time for his parking reservations than he paid for and expected to receive, suffering economic injury as a

result."); ¶ 47 ("Plaintiff and California class members suffered economic injury in the form of overpayment or payment for parking time not received."); ¶ 56 ("Plaintiff and the California class members have suffered injury in fact and have lost money as a result of Defendants' unlawful and unfair conduct, including the monetary value of parking time purchased that Plaintiff and California class members never received."). Other than listing out the hypothetical situations where a user might start the booking process before parking, *see* MTD Oppo. at 7-8, the complaint does not allege that Alicea himself was in any of these situations. It simply contains the conclusory statement that the app shortchanged Alicea's parking time by at least a minute on at least one occasion, with no details how this occurred. This is not sufficient.

**C. UCL**

**1. Unfair and Unlawful**

Alicea's other UCL claims fail. His claim under the "unfair" prong "is based on precisely the same conduct as the fraud claim, which is inadequate. Nor has he shown a violation under the FAL or the CLRA, which is required to state his "unlawful" claim. MTD at 11.

The "unfair" prong of the UCL creates a cause of action for a "business practice that is unfair even if not proscribed by some other law." *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1225 (N.D. Cal. 2014) (citing *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1143 (2003)). Courts apply two tests to analyze "unfair" UCL claims: (1) a balancing test, and (2) a tether test. *Prince-Weithorn v. GMAC Mortg.*, LLC, No. CV 11-00816 SJO (PLAx), 2011 WL 11651984, at *7 (C.D. Cal. May 5, 2011). Under the "balancing" test, courts consider whether the challenged business practice is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th 247, 257 (2010). Under the tether test, a plaintiff must show that the actions of defendants are "comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d at 1226 (cleaned up).

Alicea argues that the allegations have satisfied both tests. First, he asserts that

"PayByPhone's practice of silently starting the clock before payment, while displaying a static duration that affirmatively misleads consumers, violates California's public policy favoring transparent consumer pricing and completed assent, reflected in Civil Code § 1770(a) and Business & Professions Code §§ 17500, 17501 (among other statutes)." MTD Oppo. at 14; *see also* Compl. ¶ 53. Second, he argues that "the harm to consumers—paying for time they do not receive and often paying multiple service fees to obtain the time they intended to purchase—is 'not outweighed by any countervailing benefit' to consumers or the public." *Id.*

Aliciea's argument confirms that the unfair claim is based on the same allegations of deception and injury that form the basis of the fraud claim. And he does not contest that the "unlawful" claim is based on his CLRA, FAL, and common law fraud claims. MTD Oppo. at 14. The allegations under these prongs are insufficient for the same reasons as articulated above.

**2. Standing for Injunctive Relief**

PayByPhone also contends that Alicea lacks standing to pursue injunctive relief under the UCL because he fails to show a likelihood of future harm. MTD at 12. In opposing this argument, Alicea relies entirely on the Ninth Circuit decision in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969-70 (9th Cir. 2018), stating that the case "is directly on point" and demonstrates that he has shown "an imminent or actual threat of future harm caused by PayByPhone's deceptive practice." MTD Oppo. at 15.

In *Davidson,* the Ninth Circuit found, as a matter of first impression, that "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." 889 F.3d 956, 969 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). The court advanced two theories of future harm in this scenario: (1) "the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to," or (2) that "the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once

marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 969-70. The court found that the plaintiff had standing for injunctive relief because she alleged she wanted to continue to purchase the product—the flushable wipes—but had no way to determine if the false advertising had been corrected by simply looking at the product in the store. 889 F.3d at 970. An injunction would require the defendant to "only make truthful representations" on which the plaintiff could safely rely to repurchase the product. *Id.*

While I agree that this case is relevant to Alicea's claims, the complaint as pleaded does not support future harm under either of these theories. It is not clear whether Alicea continues to use the PayByPhone app to pay for parking services or whether he intends to do so in the future but is prevented because of being unable to verify whether PayByPhone has corrected the misrepresentations. Nor has he alleged that he may use the app in the future assuming that it has been corrected and suffer harm as a result if it has not. The complaint contains only a few cursory allegations that "Defendants' false advertising is ongoing and poses a continuing threat to consumers." Compl. ¶ 71; *see also* ¶ 105 ("Defendants' conduct is ongoing and likely to continue absent judicial intervention."). These allegations are insufficient to show likelihood of future harm at this stage.

**D. Claims Barred by Contract**

PayByPhone argues that "[n]o claim for unjust enrichment, conversion, or money had and received lies where, as here the parties' relationship is governed by contract." MTD at 13. PayByPhone further argues that the claim for unjust enrichment is subject to dismissal because it is not an independent cause of action under California law. *Id.* Alicea contends that no contract exists between the parties but that even if it did, these claims may proceed.

It is unclear what the agreement between PayByPhone and Alicia was, as discussed earlier with respect to PayByPhone's motion to compel arbitration. In its motion to dismiss, PayByPhone alleges that the complaint demonstrates the existence of a contract because it makes reference to PayByPhone's website which also contains the terms. MTD at 4. But nothing in the excerpts from the website or the app highlighted by Alicea or PayByPhone direct the user to the terms or even reference the terms. PayByPhone's arguments that these claims are invalid because they are

governed by a binding contract will not succeed at this stage.

These claims do contain a fatal flaw--the lack of injury demonstrated by plaintiff. All three types of claims require a showing that PayByPhone profited at Alicea's expense. *See e.g.*, *World Surveillance Grp. Inc. v. La Jolla Cove Investors, Inc.*, No. 13-CV-03455-WHO, 2014 WL 1411249, at *2 (N.D. Cal. Apr. 11, 2014) (unjust enrichment); *Textainer Equip. Mgmt. (U.S.) Ltd. v. TRS Inc.*, No. C 07-01519 WHA, 2007 WL 1795695, at *3 (N.D. Cal. June 20, 2007) (conversion); *Fireman's Fund Ins. Co. v. Com. & Indus. Ins. Co.*, No. C-98-1060VRW, 2000 WL 1721080, at *8 (N.D. Cal. Nov. 7, 2000) (money had and received). As discussed above, Alicea has made no showing that he did not receive what he paid for when using the app. His attempts to plead unjust enrichment, conversion, and money had and received are unsuccessful on these facts.[7]

**CONCLUSION**

For the reasons set forth above, PayByPhone's motion to compel arbitration is DENIED and its motion to dismiss is GRANTED with leave to amend. Alicea shall file any amended complaint no later than October 1, 2026.

**IT IS SO ORDERED.**

Dated: September 8, 2026

William H. Orrick
United States District Judge

[7] The parties dispute whether plaintiff's class allegations are adequate. As I have determined that the complaint must be dismissed, I do not need to address the sufficiency of the class allegations.